587 F.2d 1009
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of United
States National Bank, Appellee,
v.
FIRST NATIONAL FINANCE COMPANY, Appellant.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of United
States National Bank, Appellee,
v.
UNITED OIL WELL SUPPLY COMPANY, Appellant.
 Nos. 76-3270, 76-3271.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 12, 1978.
 
 Francis H. O'Neill, Los Angeles, Cal., for appellants.
 Charles S. Preuss, San Francisco, Cal., for appellee.
 Appeals from the United States District Court for the Southern District of California.
 Before CHAMBERS and HUG, Circuit Judges, and SOLOMON* Senior District Judge.
 HUG, Circuit Judge:
 
 
 1
 This is a consolidation of appeals from two partial summary judgments in two closely related cases. The first appeal involves a suit by the Federal Deposit Insurance Corporation against First National Finance Company on four promissory notes; the second involves a suit by FDIC against United Oil Well Supply Company on one promissory note. In each case, the summary judgment was granted in favor of the FDIC and against the two corporate defendants who now appeal.
 
 
 2
 The complaints in each case include other parties and other issues not involved in these appeals. The district court, pursuant to Fed.R.Civ.P. 54(b), certified the orders granting partial summary judgments as final judgments subject to appeal. These appeals concern only the validity of the judgments on the promissory notes.
 
 
 3
 The FDIC brought both of these actions on the promissory notes in its capacity as receiver for the United States National Bank in the process of collecting assets and winding up the affairs of the insolvent bank. Jurisdiction is founded upon 12 U.S.C. § 1819 and 28 U.S.C. §§ 1331, 1345 and 1348.
 
 
 4
 First National Finance Company and United Oil Well Supply Company are both California corporations. First National Finance owns all of the outstanding stock of United Oil Well. John A. Smith is the president and controlling director of both corporations. The four notes of First National Finance were executed by John A. Smith as president, payable to the bank, and were in the amounts of $1,400,000, $1,150,000, $250,000 and $525,000. The note of United Oil Well was also executed by John A. Smith as president, payable to the bank and was in the amount of $2,250,000.
 
 
 5
 In reviewing the orders granting the summary judgments, we must inquire first whether there is any genuine issue as to any material fact. If there is no genuine issue of material fact, then we must determine whether, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the appellants, the FDIC is entitled to prevail as a matter of law. MGM Grand Hotel, Inc. v. Imperial Glass Co., 533 F.2d 486, 488 (9th Cir. 1976). We find that there is no genuine issue of fact in either case and that the FDIC is entitled to prevail as a matter of law and therefore affirm the judgments of the district court.
 
 
 6
 It is undisputed that all of these notes were duly executed and, under their terms, are due and unpaid. The defendants, however, raise affirmative defenses to the notes. We shall first consider the $1,400,000 and $1,150,000 notes of First National Finance, along with the $2,500,000 note of United Oil Well, since the same factual situation surrounds these notes and the same affirmative defenses are asserted.
 
 
 7
 First National Finance and United Oil Well each contend that these three notes were purely accommodation notes; that there was a lack of consideration and that there was a collateral agreement with the bank that the notes would never have to be paid.
 
 
 8
 The undisputed facts are as follows. First National Finance issued a promissory note payable to the bank in the amount of $1,400,000 on October 16, 1972, which was renewed on March 1, 1973. It also issued a second note payable to the bank in the amount of $1,150,000 on October 25, 1972, which was renewed on April 2, 1973. United Oil Well issued a promissory note payable to the bank on December 29, 1972, which was renewed on March 1, 1973. All notes were executed by John A. Smith as president of the respective corporations. The affirmative defenses arise from the facts surrounding the issuance of the original promissory notes. The funds representing the face amount of each note were deposited to the account of each corporation. Simultaneously or shortly thereafter, these funds were transferred to Yellow Cab Company by means of corporate checks signed by John A. Smith. Yellow Cab Company was a subsidiary of Westgate-California Corporation, which was controlled by C. Arnholt Smith, the chairman of the board and chief administrative officer of the bank and the brother of John A. Smith.
 
 
 9
 The major contention of the appellants is that there existed a collateral oral agreement between C. Arnholt Smith, as chief executive officer of the bank, and John A. Smith, as president of the appellant corporations, that the notes were solely accommodation notes and would never have to be paid by the appellants. Specifically, the affidavits of John A. Smith state, with regard to each note, that "Mr. C. A. Smith expressly stated to me that this was an accommodation loan and that neither myself nor my company would be required to repay the said note, and that it was being made for the benefit of assisting United States National Bank and the Yellow Cab Company, in completion of certain bookkeeping corrections."
 
 
 10
 We hold that the appellants are estopped, as a matter of law, from asserting the defense of a secret agreement not to enforce the promissory note, under the rationale of D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The appellants have asserted that the D'Oench case, as interpreted by this circuit in FDIC v. Meo, 505 F.2d 790 (9th Cir. 1974) is not applicable. The holding of the D'Oench case is summarized in Meo.
 
 
 11
 "(D'Oench ) involved a note, regular on its face, executed by the defendant, an accommodation maker. The note was given to the bank to conceal certain irregularities from the bank examiners, and at the time the note was executed the bank agreed that the note would not be collected and that all interest payments made would be repaid. After the bank closed, FDIC acquired its assets and sued to collect on the note. At trial, the maker contended that the note was given without consideration, and that the secret agreement by the bank was enforceable against FDIC. Noting that federal policy protects FDIC and the public funds which it administers against misrepresentations as to bank assets, the Supreme Court held that the accommodation maker was estopped from asserting either of these defenses."
 
 
 12
 Meo at 791-792.
 
 
 13
 The Meo case held the D'Oench doctrine to be inapplicable to the facts of the Meo case. There, a note was given in exchange for 1,000 shares of San Francisco National Bank stock which were to be held as security for the loan from the bank. The bank did not issue the stock, but instead issued 1,000 voting trust certificates and held them as security. The court notes in Meo that there was no secret agreement whereby the assets of the bank would be overstated. There was simply a failure of consideration of which the promissor was unaware until after the bank was closed and the suit was filed by the FDIC.
 
 
 14
 The distinction between Meo and this case is clear. In this case, there was no failure of consideration as existed in Meo. It is undisputed that the proceeds of each of the loans were deposited to the accounts of the respective corporations and subsequently paid over to Yellow Cab Company on checks issued by appellants. There was in this case, as in D'Oench, participation by the appellants in a secret agreement with the bank which permitted the bank to overstate its assets.
 
 
 15
 It is the contention of appellants that the D'Oench case does not apply to this situation, because John A. Smith had no specific knowledge of any particular deceptive scheme of the bank to cover up the fact that it had loaned money to a subsidiary of Westgate-California Corporation in excess of that allowed by law. It is not necessary for the accommodation maker to have knowledge of the specific scheme or fraudulent arrangement to preclude the defense; it is sufficient that he lends himself to a scheme to aid the bank in concealing the true nature of the transaction, thus misrepresenting the note as a valid asset of the bank. The Court stated in D'Oench :
 
 
 16
 "Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners. . . . It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which the respondent relied in insuring the bank was or was likely to be misled."
 
 
 17
 D'Oench 315 U.S. at 460, 62 S.Ct. at 680.
 
 
 18
 Appellants also seek to distinguish D'Oench on the grounds that the FDIC was there proceeding as a creditor of the bank, whereas it is here proceeding as a receiver of the bank. The express language of the Court in D'Oench, which refers to receivers as well as creditors, precludes this distinction. D'Oench at 458, 62 S.Ct. 676.
 
 
 19
 The appellants contend that California law of estoppel requires that there must be a finding that the FDIC as receiver relied upon the conduct of appellants to its injury. Liability on the notes, however, involves a decision of federal law, not state law. D'Oench at 456, 62 S.Ct. 676. The federal law does not necessitate such a finding. The Supreme Court clearly announced:
 
 
 20
 "Furthermore, the fact that creditors may not have been deceived or specifically injured is irrelevant. As we held in the Deitrick case ((Deitrich v. Greaney ) 309 U.S. (190) p. 198, 60 S.Ct. 480, 84 L.Ed. 694), it is the 'evil tendency' of the acts to contravene the policy governing banking transactions which lies at the root of the rule."
 
 
 21
 D'Oench at 459, 62 S.Ct. at 680.
 
 
 22
 Appellants assert that the defense of estoppel was not properly raised because it was not pled by the FDIC. The affirmative defense alleging the agreement not to enforce the notes was necessarily first brought forth in the answer. No reply to the answer is allowed, unless ordered by the court. Fed.R.Civ.P. 7(a). Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. Fed.R.Civ.P. 8(d). No pleading of estoppel by the FDIC was required.
 
 
 23
 Appellants argue as an additional affirmative defense that they are exonerated from liability on the three notes because they are sureties for Yellow Cab Company, which they maintain is the primary obligor, and that the FDIC has released Yellow Cab Company by dismissing it from the law suits. Appellants rely upon Cal.Com.Code § 3415(1). The argument lacks merit; Yellow Cab Company was not a party to the notes since its name did not appear upon the instruments. Bank of America v. Superior Court, 4 Cal.App.3d 435, 84 Cal.Rptr. 421 (1970). Yellow Cab Company was not liable on the notes. The appellants could not be sureties for a primary contractual liability that did not exist.
 
 
 24
 We turn now to the remaining two notes of First National Finance, a $525,000 note executed on December 29, 1972 and a $250,000 note executed April 25, 1973. It is undisputed that First National Finance received the funds and that the notes under their terms are due and remain unpaid. Appellant assigned as collateral for both notes a promissory note secured by a deed of trust. Appellant contends that the FDIC must proceed first to realize upon the security for the notes before suing on the notes. The district court correctly ruled that the collateral for the notes was personal property, Cal.Civ.Code § 14(3) and that California law permits the party to elect to sue on the notes without first pursuing the collateral. Bank of California v. Leone, 37 Cal.App.3d 444, 112 Cal.Rptr. 394 (1974). The appellants further contend that the actions of the bank and the FDIC have impaired the collateral. The affidavits produced in the district court do not provide a factual basis to support this contention.
 
 
 25
 Lastly, appellants urge that the district court's certification of the partial summary judgments pursuant to Fed.R.Civ.P. 54(b) was improper. Appellants argue that the district court's finding of no just reason for delay in entering final judgment against them on the promissory notes was in error. It is well established that the determination of whether just reason for delay exists may only be challenged upon a clear showing of an abuse of discretion. Illinois Tool Works, Inc. v. Brunsing, 378 F.2d 234 (9th Cir. 1967); Metal Coating Corp. v. National Steel Construction Co., 350 F.2d 521 (9th Cir. 1965). No such abuse exists in this case.
 
 
 26
 The judgments are affirmed.
 
 
 
 *
 Hon. Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation