## In re BAUMAN.
### No. 3483.

District Court, N. D. California, N. D.
Jan. 4, 1932.

Torregano & Stark, of San Francisco, Cal., for trustee in bankruptcy.

Dreher & McClellan and R. G. Hunt, all of San Francisco, Cal., for claimant.

KERRIGAN, District Judge.

This is an appeal from an order of a referee in an involuntary bankruptcy proceeding commenced November 25, 1929. The claimant in this proceeding, the Half Moon Fruit & Produce Company, is a copartnership engaged in the business of commission merchants at San Francisco. For a period of ten years prior to the above-mentioned date this firm made seasonal advances to E. C. Bauman, the bankrupt, a produce grower, in consideration of delivery to it of produce for sale on commission. The partnership had advanced to Bauman at the time of this proceeding the sum of $61,180.18. Prior to September 30, 1929, the grower had shipped seventy-five carloads of melons under bills of lading to the claimant as consignee. The referee found that the grower was insolvent on September 30, 1929, and that such fact was on that date known to the claimant. With this finding the claimant here makes no objection. There was realized on the sale of the melons the sum of $10,078.65 net, which amount the claimant collected and applied to the grower's account for advances and charges. The firm filed with the referee a claim for the balance owing, to wit, $51,101.53. The trustee contended the $10,078.65 so applied constituted a preference, and objected to the allowance of the claim as filed, unless claimant surrendered such alleged preference. The referee sustained the objection, and disallowed the claim until claimant should pay to the trustee the amount of the preference. From that order of the referee this review is taken.

The claimant asserts that it is entitled to retain said $10,078.65 on three grounds: First, that it has a factor's lien under sections 2026 and 3053 of the Civil Code of California; second, that it has an equitable lien; and, third, that it has a right of set-off. Section 3053 provides that a factor has a general lien dependent on possession for all that is due him as such. The referee found that the agreement between the parties was that on the sale of the produce the partnership was to apply the proceeds on account of its advances and charges. Such would be the claimant's right without an express agreement. The advances were made in connection with the produce shipped, and were proper charges against the same, and the factor's lien applied thereto. Having a valid lien, the claimant had a right under its authority to sell to apply the proceeds in satisfaction of the lien. In the absence of such a statutory lien, an equitable lien in that behalf would exist. A present allowance in consideration of, and in reliance upon, repayment out of designated property, with the intent and understanding that the advance will be so repaid, constitutes a charge upon such property termed an equitable lien. All the essentials of such an equitable lien are here present. In re Interborough Consol. Corporation (C. C. A.) 288 F. 334, 32 A. L. R. 932.

But the claimant's course of conduct precludes the court from enforcing these liens. While in possession of the melons, and before their sale, claimant on October 1, 1921, assigned its entire claim for collection purposes to one B. Farrell, who commenced suit thereon and attached property of the grower in Stanislaus county, and garnished all property of the grower in the hands of claimant. It appears that claimant after the assignment continued to be the real owner of the assigned claim. At the time of the attachment, the cars of melons were either rolling or in the Eastern markets. The title to these melons remained in the grower with a lien as aforesaid in the claimant. The trustee asserts that such suit and attachment extinguished any lien claimant may have had, citing Wingard v. Banning, 39 Cal. 543; Gault v. Wiens, 32 Cal. App. 1, 3, 161 P. 996; and Latta v. Tutton, 122 Cal. 279, 283, 54 P. 844, 68 Am. St. Rep. 30.

Under sections 537 and 538 of the California Code of Civil Procedure in order to procure a writ of attachment, plaintiff must make an affidavit that the claim sued upon is not secured by mortgage or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, the security has become worthless. Concerning the effect of such an affidavit upon an existing lien, the Supreme Court of the state of California in Wingard v. Banning, supra, says: "In doing so he clearly abandoned his lien, and elected to rely on his attachment as a security. The practice is not to be tolerated which would permit a party holding and claiming a lien on property to swear that he has no lien, and on the faith of his affidavit to that effect, to procure an attachment, and, subsequently, when the attachment proves unavailing, to fall back on the alleged lien in the very face of the affidavit. This would be to permit him to gamble on the result,

and would lead to perjury and fraud. It would pervert the plainest principles of law and justice to allow a plaintiff to seize the property of the defendant in advance of a judgment on a sworn statement that the debt was not secured by a lien, pledge, or mortgage, and afterwards to permit him, notwithstanding his oath to the contrary, to assert a lien on the very property seized under the attachment. Having obtained the attachment on the faith that there was no lien, every consideration of equity and fair dealing, and a due regard to the good faith which the law exacts of litigants, demand that he should be estopped from afterwards asserting the contrary."

■ Claimant contends that this case should not apply because the sheriff took actual possession of the property in which the lien had existed, whereas in the instant case there was no loss of possession of the property, but only a garnishment of the grower's right to the proceeds therefrom, furthermore because the equitable lien of claimant was not affected by the attachment because not dependent upon possession. It does not seem that there is merit in these contentions, for the reason that the essence of the ruling in the Wingard Case is that the lien was forfeited because of the plaintiff's affidavit that the claim was unsecured by lien. The state law, as interpreted by the courts of last resort of the state, controls between the parties here, and is binding upon this litigation.

■ Here a mistake in remedy under the state law results in a loss of lien. Analogously in cases of suit upon conditional sales contract an action upon the debt is a waiver of title or reservation of lien. I cannot help but feel that the result in this case is harsh,

but the court is without power to absolve claimant from its mistake. It is evident from the quotation from Wingard v. Banning that there is no escape from the conclusion that the claimant is bound by its oath of "no lien" on the ground of public policy.

The set-off provisions of section 68 of the Bankruptcy Act (11 USCA § 108) do not apply to the facts of this case.

■ The referee's conclusions that the transaction amounted to a preference is correct, but not on the ground that a valid lien did not originally exist, but on the ground that claimant is estopped from asserting the lien.

■ The question is also presented as to whether or not claimant may set off an advance of $4,750 made after the levy of attachment, and not included in the assigned claim sued upon. Section 60c of the Bankruptcy Act (11 USCA § 96 (c) is the controlling section: "If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

Such advance was made shortly after the attachment and before claimant had received and applied the proceeds of the sale of melons to the account. The preferences arose as and when the proceeds were received. Under section 60c only advances made after the receipt of the preference may be set off. So far as I have been able to ascertain from the record, no advances were made after the preferences were received.

The order of the referee is affirmed.