[Civ. No. 207. Fifth Dist. May 2, 1963.]

KENNETH A. JACKSON, Plaintiff and Respondent, v. WILLIAM E. DONOVAN et al., Defendants and Respondents; JOSEPH R. OCHINERO, Defendant and Appellant.

Lawrence W. Young and Robert L. Young for Defendant and Appellant.

Wallace G. Quinlisk for Plaintiff and Respondent.

Burke & La Rue and Annette La Rue for Defendants and Respondents.

BROWN (R.M.), J.—Respondent Jackson was formerly a partner with respondents Donovan and Shada doing business as the Valley Green Stamp Company. Jackson, having advanced to this company $3,000, withdrew from the partnership and disposed of his interest to Donovan and Shada and Zarcone, which three then formed a new partnership. The new partnership and the three partners thereof on August 28, 1959, executed a note to Jackson in the amount of $3,000. In November 1959, appellant, uncle of Zarcone, loaned the new partnership $5,000 evidenced by a note.

On May 24, 1960, appellant purchased the one-third interest of Zarcone and on May 25, 1960, purchased, by written agreement, the remaining two-thirds interest of Donovan and Shada, "said interests being all the rights, title and interests said Donovan and Shada might have in the Valley Green Stamp Co."; said agreement mentioned the uncompleted incorporation of the company, the manner of payment therefor, and,

"Said purchase price shall include all bank accounts, stock in trade, stamps and accounts receivable owned by said Valley Green Stamp Co., and shall also include the exclusive right for said buyer, Ochinero, to use the company name, . . . Said Ochinero shall on the above effective date assume all the obligations and liabilities of said Donovan and Shada pertaining to said Valley Green Stamp Co., a copy of said obligations being attached hereto and made part hereof; and said buyer shall hold said Donovan and Shada harmless for said obligations and liabilities and said Ochinero shall pay to said Donovan and Shada any expenses, including legal fees and costs, that they might incur by reason of the failure of said Ochinero of paying said obligations . . . said Ochinero shall surrender and mark paid that certain promissory note in his favor for $5,000.00 and signed by said Donovan, Shada and Zarcone.

"Also attached hereto and made part hereof is a Balance Sheet showing the condition of said company as of May 15, 1960. It is agreed by all parties that this is a true picture of the financial status of the company at that time and that no material changes have taken place since that time."

Attached to said agreement was a document entitled "Accounts Payable by Valley Green Stamp Co. as of May 26, 1960" in the sum of $7,258.06, and a photostatic copy of a balance sheet as of May 15, 1960, in the name of Valley Green Stamp Company, Inc., showing assets of $6,062.35, and lia-

bilities consisting of notes payable $11,000, accounts payable $7,030.25, payroll taxes $9.00, and contingent redemption liability $13,198.51, for total liabilities of $31,237.76. The net worth was listed as a minus $25,175.41.

While the three partners had filed incorporation papers on December 31, 1959, such corporation did not operate; there was no transfer of any property or issuance of any stock due to problems not material to this action.

From the testimony admitted over the objection of appellant, it appears that the total notes payable amounting to $11,000 consisted of a note for $5,000 to appellant which was marked paid pursuant to the agreement, a $3,000 note to a local bank which was also paid by appellant in connection with a subsequent sale of the business, and the remaining $3,000 was represented by a note payable to respondent Jackson.

After demand was made for payment of the remaining note, respondent Jackson filed suit against Donovan, Shada, Zarcone and appellant, alleging in his complaint the agreement and note and assumption of the note by appellant, and praying for $3,000 plus attorneys' fees and court costs. Respondent Donovan and respondent Shada having been served (but not Zarcone), filed an answer and a cross-complaint against appellant asking for relief against appellant on the agreement to pay the note and attorneys' fees.

In appellant's answer to the cross-complaint of Donovan and Shada he admitted entering into the agreement, and alleged that at the time of the execution thereof Donovan and Shada fraudulently represented to appellant that the liabilities of the stamp company were set forth in the balance sheet attached to said agreement, that appellant relied upon such representations and would not have entered into said agreement if he had known the true state of the financial condition of said stamp company, and that the liabilities were "thousands of dollars in excess of the amount set forth in said Balance Sheet." He also asked for the payment of the $5,000 note which he had marked paid pursuant to the agreement.

The trial court made findings of fact which in general were that the appellant had assumed by the written contract all of the obligations, including the $3,000 note in favor of respondent Jackson; granted judgment in favor of respondent Jackson and against Donovan, Shada and appellant for the $3,000 note and attorneys' fees, and also granted judgment in

favor of respondents Donovan and Shada; and found against appellant on his cross-complaint as to fraud.

It is from this judgment that the appellant appeals on the general grounds that the interpretation of the agreement is a matter of law, that the finding of the trial court is not binding on the appellate court, that the court was in error in over-ruling his objections to the introduction of parol evidence, and that the proper interpretation of the agreement would be that the appellant had assumed only the obligations set forth in the list of accounts payable totaling $7,258.06 but had not assumed any of the liabilities set forth in the balance sheet.

When the interpretation of a written agreement depends solely upon the language of the instrument, the trial court's construction is not binding and a reviewing court will determine its meaning as a matter of law, as stated in *Borgonovo* v. *Henderson*, 182 Cal.App.2d 220, 230 [6 Cal. Rptr. 236], quoting from *Stevenson* v. *County of San Diego*, 26 Cal.2d 842, 844 [161 P.2d 553]. The Supreme Court, in the *Stevenson* case, further states, ''On the other hand, if parol evidence is necessary to explain the meaning of an instrument, an appellate court will follow the trial court's construction if it is supported by the evidence.''

The conclusion of the trial court will not be disturbed if the construction of an uncertain written agreement is, with the aid of testimony, not unreasonable or inconsistent with the evidence. (*Estate of Guasti*, 117 Cal.App.2d 612, 617 [256 P.2d 629].)

The question we have here is whether or not the appellant did assume and agree to pay the respondent Jackson's note. The appellant consistently objected to the introduction of parol evidence and was overruled. This evidence had to do with the knowledge of appellant that these notes were due, that the notes were included in the financial statement, that the intention of the parties was that appellant was buying out the business and assuming all of the liabilities as set forth in the balance sheet, that this balance sheet was a part of the sale, and that there was no attempt to vary the terms of the agreement.

Appellant relies on the parol evidence rule but fails to consider the exception to this rule as is outlined in *Jegen* v. *Berger*, 77 Cal.App.2d 1, 8-9 [174 P.2d 489]:

''Furthermore, one of the exceptions to the parol evidence

rule is that it does not apply when the person seeking to introduce it was not originally a party to the contract, and is not the successor or assign of a party to it. As was said in the case of *Greve* v. *Echo Oil Co.*, 8 Cal.App. 275, at page 279 [96 P. 904]: ' "Where the controversy is between a party to a written contract and one who is neither a party to it or a privy to one who is, the rule excluding parol evidence to explain, vary, modify or contradict the writing does not apply. In such case neither the party nor the stranger to the contract is bound by the rule excluding parol evidence." ' (See also, *Dunn* v. *Price*, 112 Cal. 46 [44 P. 354]; *Spraul* v. *Garliepp*, 138 Cal.App. 491 [32 P.2d 657]; *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611 [61 P.2d 83].)' "

Respondent Jackson was not a party to the contract nor a successor or assign of a party to it and is therefore not bound by the rule excluding parol evidence. Thus, even under Code of Civil Procedure, section 1856, the respondent Jackson not being a party or a representative of a successor in interest, would have the advantage of the exception of the parol evidence rule. This section does not exclude other evidence even under the parol evidence rule as to the circumstances under which the agreement was made, as set forth in section 1860 of the Code of Civil Procedure, or to explain extrinsic ambiguity or establish illegality or fraud. This latter section places the judge in a position to interpret the language.

The respondent Jackson did introduce the document into evidence and is not permitted to impeach or contradict it where there is no fraud involved. (*Kent* v. *First Trust & Savings Bank*, 101 Cal.App.2d 361, 370 [225 P.2d 625]; *Davenport* v. *Stratton*, 24 Cal.2d 232, 241 [149 P.2d 4].)

Here, appellant has denied that he knew anything about this obligation or that he had ever discussed it with anyone until much later after the contract was made. There was testimony by Donovan and Shada, however, that appellant participated in conversations regarding payment of the note to Jackson not only prior to the date of the agreement but on the day of the agreement before signing. The appellant was not a stranger to the operations of the stamp company. After his nephew had bought into the company and had become a partner, the appellant admitted that he had attended many meetings of the group, that he had loaned $5,000 to the partnership, and that he had advanced money to Zarcone, and that after the subsequent sale the $3,000 loan to the bank

was paid off and the payroll tax bill was paid, though he claims this was a voluntary payment. His answer to the cross-complaint alleged fraud in the contract because there were actually thousands of dollars more of liabilities than set forth in the balance sheet and that he would not have entered into said agreement if he had known the true facts of the financial condition.

In *Jegen v. Berger, supra,* 77 Cal.App.2d 1, the court held against appellant's contention that there was no assumption of liabilities by him because there was evidence otherwise.

It is true that the specific provisions in an agreement prevail over those that are general, if inconsistent with the general provisions, as stated in *Scudder v. Perce,* 159 Cal. 429, 433 [114 P. 571]; Civil Code, section 1653.

"Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." (Civ. Code, § 1652.)

It is appellant's contention that the reference in the agreement to the balance sheet showing the condition of the company is purely for information and thus is a general provision, while "said obligations" attached to the agreement are specific and are the only debts he agreed to pay, as listed as "Accounts Payable."

From an examination of all of the testimony and the agreement, we think the court properly interpreted it to mean that the appellant who had already bought a one-third interest in the company was buying the other two-thirds and that it was his intention to assume all of the obligations of the company as set forth not only in the document entitled "Accounts Payable" (the amount being about $227.81 more than the accounts payable set forth under "Liabilities" in the balance sheet), but that he intended to assume all of the liabilities that were listed on the balance sheet as well. At the most, it can be said that this is an interpretation of what is apparently ambiguous as to whether assuming all obligations and liabilities included only the "obligations" attached or in addition the liabilities of the financial statement, and that extrinsic evidence may be considered not to vary the terms of the agreement, but to aid the court in ascertaining the true intent of the parties. (See *Ribiero v. Dotson,* 187 Cal. App.2d 819, 821 [9 Cal.Rptr. 909]; Civ. Code, § 1860; *Han-*

*rahan-Wilcox Corp.* v. *Jenison Machinery Co.*, 23 Cal.App.2d 642, 645 [73 P.2d 1241].)

As set forth in Corporations Code section 15041, subdivision (4), the creditors of a dissolved partnership are also creditors of the person or partnership continuing the business, where said third person has promised to pay the debts.

█ It is our opinion that the appellant did promise to pay the partnership debts as set forth in the balance sheet as well as the "Accounts Payable," that the parol evidence was properly admitted to explain what the parties meant, and that where the testimony by both sides has created conflicts with reference to what the intentions of the parties were, " . . . this court will not interfere with those conclusions of the triers of fact unless it can be said, as a matter of law, that the evidence in respondent's favor does not support such conclusions." (*Jegen* v. *Berger, supra,* 77 Cal.App.2d 1, 9.)

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1963.